**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: ) | |
| ) | |
|   FRICTIONLESS WORLD, LLC ) | Case No. 19-18459 MER |
| ) | Chapter 11 |
|             Debtor. ) | |
| ) | |
| ------------------------------------------------- ) | |
| TIYA INTERNATIONAL CO., LTD, ) | |
| ) | |
| ) | Adv. Proc. No. _____ |
|            Plaintiff, ) | |
| ) | **COMPLAINT** |
| -against- ) | |
| ) | |
| ) | |
| ) | |
| FRICTIONLESS WORLD, LLC and DANIEL ) | |
| BANJO, ) | |
|            Defendants. ) | |
| ------------------------------------------------- | |

Plaintiff Tiya International Co., Ltd. ("Tiya"), by and through its counsel, The Law Office of Theodore Geiger, PLLC, as and for its Complaint against Defendants Frictionless World, LLC ("Frictionless World") and Daniel Banjo ("Banjo") alleges as follows:

**NATURE OF THE ACTION**

1. This action arises over a series of purchase orders totaling more than $1 million issued to Tiya from Frictionless World at the behest of its sole owner and alter ego Banjo. Tiya, as it had many times before, agreed to manufacture the goods Frictionless World ordered and to ship them from China to Frictionless World or its designees. However, unbeknownst to Tiya, Frictionless World was embroiled in a dispute with its primary supplier Changzhou Inter Universal Machine & Equipment Co., Ltd. ("CIU") and with various individuals and entities related to CIU, that would render Frictionless World, insolvent, illiquid and without sufficient customer relationships

1

to carry on.[1] Tiya, of course, would not have fulfilled the purchase orders had Frictionless World and Banjo not concealed the true state of affairs from them. However, since Frictionless World and Banjo kept the truth about their business hidden from Tiya, Tiya performed and was damaged when, inevitably, Frictionless World failed to pay for the goods that it had ordered. Accordingly, Tiya is now entitled to recover under theories of breach of contract, fraud and fraudulent concealment.

## PARTIES

2. Plaintiff Tiya, is a private limited company organized under the laws of China with its principal place of business in China.

3. Defendant FW is a limited liability company organized under the laws of the State of Colorado, with its principal place of business in Colorado. FW is a chapter 11 debtor-in-possession in the underlying bankruptcy case.

4. Defendant Banjo is a natural person. Upon information and belief he is a resident of Colorado and the sole owner and operator of Frictionless World

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334

6. This proceeding raises core claims pursuant to 11 U.S.C. § 157(b)(2).

7. To the extent that this proceeding addresses non-core claims, this Court may hear them pursuant to 11 U.S.C. § 157(c).

8. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

---

[1] Those individuals, Li Zhixiang, Changzhou Zhong Lian Investment Co. LTD., Serena Li, and Frank Li (collectively the "Li Defendants") were, along with CIU, named as defendants in an adversary proceeding Frictionless World filed before this Court, captioned *Frictionless World, LLC v. Frictionless, LLC*, Adv. Proc. No. 19-1282-MER, Dkt. 1.

# FACTUAL BACKGROUND

## *The Tiya-Frictionless World Relationship*

9. Beginning in 2015, Tiya agreed to manufacture goods to Frictionless World's specifications, including plate compactors, all terrain mini-transporters, and log splitters.

10. The typical course of dealing between Tiya and Frictionless World was that Frictionless World would issue a purchase order to Tiya for the goods that it wanted to purchase. Tiya would then issue Frictionless World a pro forma invoice confirming the order and, after that was signed, would begin manufacturing the goods before shipping them from its facility in China to Frictionless World or its designees.

11. In June and July 2019, Frictionless World issued 21 purchase orders to Tiya (the "Purchase Orders") totaling $1,043,636.99, each of which was confirmed via a pro forma invoice. The Purchase Orders and related invoices are summarized in the below table and annexed hereto as Exhibit A.

| Invoice | Associated Purchase Order | Date | Amount |
|---|---|---|---|
| 1910T1390 | 4004361 | 6/10/2019 | $60,142.50 |
| 1910T1390 | 4004362 | 6/10/2019 | $60,142.50 |
| 1910T1391 | 4004360 | 6/10/2019 | $67,298.00 |
| 1910T1396 | 4004357 | 6/10/2019 | $41,801.76 |
| 1913T1793 | 4004397 | 7/19/2019 | $37,011.50 |
| 1913T1796 | 404492 | 7/19/2019 | $37,011.50 |
| 1913T1798 | 404493 | 7/19/2019 | $37,011.50 |
| 1913T1799 | 404494 | 7/19/2019 | $37,011.50 |

| Invoice | Associated Purchase Order | Date | Amount |
|---|---|---|---|
| 1913T1800 | 404495 | 7/19/2019 | $37,011.50 |
| 1913T1801 | 404496 | 7/19/2019 | $37,011.50 |
| 1913T1802 | 404497 | 7/19/2019 | $37,011.50 |
| 1913T1803 | 404498 | 7/19/2019 | $37,011.50 |
| 1913T1804 | 404499 | 7/19/2019 | $37,011.50 |
| 1913T1805 | 404500 | 7/19/2019 | $16,397.50 |
| 1913T1806 | 404501 | 7/19/2019 | $20,614.00 |
| 1913T1807 | 404502 | 7/19/2019 | $37,011.50 |
| 1913T1808 | 404503 | 7/19/2019 | $37,011.50 |
| 1913T1809 | 404504 | 7/19/2019 | $37,011.50 |
| 1913T1810 | 404505 | 7/19/2019 | $37,011.50 |
| 1913T1811 | 404506 | 7/19/2019 | $37,011.50 |
| 1913T1812 | 404507 | 7/19/2019 | $37,011.50 |
| 1913T1817 | 404508 | 7/19/2019 | $37,011.50 |
| 1913T1818 | 404509 | 7/19/2019 | $37,011.50 |
| 1913T1819 | 404510 | 7/19/2019 | $37,011.50 |
| 1913T1820 | 404511 | 7/19/2019 | $37,011.50 |
| 1913T1821 | 404512 | 7/19/2019 | $37,011.50 |
| 1913T1833 | 404543 | 7/23/2019 | $37,011.50 |

12. Each of the Purchase Orders and associated invoices called for Frictionless World to make payment in full within 45 days of the shipment on board date for each order, with title to the goods remaining vested in Tiya until payment was made.

13. Tiya duly began manufacturing the goods called for in the Purchase Orders and to begin to ship the completed goods from China to the United States.

### *Frictionless World's Business Disintegrates*

14. However, while it was ordering over a million dollars of goods from Tiya, Frictionless World's business faced an existential crisis, as it was faced with the loss of its primary supplier, a loss that placed the continued viability of Frictionless World in grave peril. Tiya, for its part was entirely unaware of these events.

15. As Frictionless World has itself alleged in its complaint filed before this Court in *Frictionless World, LLC v. Frictionless, LLC*, Adv. Proc. No. 19-1282-MER, Dkt. 1 (the "Adversary Proceeding Complaint"), CIU produced approximately 90% of Frictionless World's production between 2012 and 2019. *See* Adversary Proceeding Complaint, ¶ 65.

16. However, in January 2019, disputes arose between Frictionless World and the Li Defendants regarding the Li Defendants' purported overcharging for the cost of assembling products delivered to Frictionless World and their allegedly improper sales of Frictionless World's competitors. *Id*, ¶¶ 70-71.

17. In addition, in 2019, Frictionless World alleged that much of the inventory received from CIU was of inferior quality, causing Frictionless World to receive many warranty claims and rendering large portions of Frictionless World's inventory either unsaleable or only able to be sold at a steep discount. *Id.,* ¶ 149

5

18. Frictionless World also claims that these problems were exacerbated by CIU's failure to ship goods to Frictionless World during the first quarter of 2019, which Frictionless World contends was an intentional act due to the disputes between it and the Li Defendants. *Id.,* ¶¶ 74. 77, 81.

19. As Frictionless World itself has admitted, its dispute with the Li Defendants caused it to breach over $20.8 million in purchase orders as of April 29, 2019. *Id.,* ¶ 82. This resulted in many of Frictionless World's long-time customers abandoning it, and others issuing substantial contractual penalties for failure to deliver, all resulting in "irreconcilable harm to FW's reputation and earning ability." *Id.,* ¶ 84-85, and Exhibits 41, and 52-56. For example, Lowe's had issued $150,000 in late fees, cancelled $2,000,000 in orders by April 2019 and severed the relationship by early July. *Id,* Exhibits 41, 52. Similarly, late deliveries rendered the dissolution of Frictionless World's relationship with Wal-Mart inevitable by February 2019. *Id.,* Ex. 48. Fleet Farm severed its relationship by July 1, 2019. *Id.,* Ex. 53

20. These breaches also caused Frictionless World to lose the customers necessary to sell its existing inventory at fair market value. *Id.,* ¶ 147

21. Frictionless World was unable to find alternate suppliers as CIU disclosed its intention not to ship on April 29, 2019, well into the sales season. *Id.* at ¶ 87.

22. Frictionless World's liquidity was also greatly compromised by the fact that it loaned $6,611,227 to the Li Defendants on or about February 1, 2019, and obtained an additional $1.5 million dollar loan on or about that date, the proceeds of which were transferred to the Li Defendants. Frictionless World, by its own admission, did not receive reasonably equivalent value for these transfers. *Id.* at ¶ 73, 76, 142-44, 212.

23. In addition, Frictionless World's liquidity was also diminished by its pre-payment of $4,460,265.84 in invoices to the Li Defendants between January 1, 2019 and April 29, 2019, for which it also alleges that it did not receive reasonably equivalent value. *Id.,* ¶¶ 76, 156-159, 212.

24. As a result of these transactions, Frictionless World became insolvent and did not have sufficient capital to continue operations. *Id.,* ¶¶ 160-161.

25. These matters came to a head on April 15, 2019, when the Li Defendants initiated an arbitration against Banjo, which Frictionless World voluntarily joined as a party. *Id.* ¶ 79. While the Li Defendants did not quantify the damages they sought in the arbitration, they did state that "the total of these damages may well exceed tens of millions of dollars." *See* Declaration of Brian Koosed, Exhibit 1 at ¶ 82, filed in *Frictionless World, LLC v. Frictionless, LLC*, Adv. Proc. No. 19-1282-MER at Dkt. 23.

26. Frictionless World has also alleged that CIU has improperly used its intellectual property to sell and distribute Frictionless World products, further harming Frictionless World. Adversary Proceeding Complaint, ¶¶ 93-102.

27. As Frictionless World itself has stated, its dispute with the Li Defendants resulted in "a staggering reduction in revenue," "extreme losses," the loss of contracts with retailers "resulting in the removal of FW products from hundreds of stores both inside and outside of the US" and an "over 90% loss in the value of FW as a business." *Id.* at ¶ 90.

### *Frictionless World and Banjo Fail To Disclose That Frictionless World Was Engulfed In Crisis*

28. Frictionless World and Banjo did not disclose any of this to Tiya before issuing it over a million dollars in purchase orders. Moreover, since none of the issues facing Frictionless World were publicly disclosed, they knew that failure to disclose the recent immolation of Frictionless

7

World's business would result in Tiya being ignorant of it when considering whether to accept the purchase orders.

29. Tiya was unaware of Frictionless World's condition. Had Tiya been aware of it, it would not have accepted the purchase orders and incurred the considerable expense of manufacturing and shipping goods.

30. Frictionless World's and Banjo's failure to disclose was done for the purpose of inducing Tiya to accept the purchase orders, which Tiya duly did.

31. Frictionless World's lack of solvency, sufficient liquidity to purchase the goods it had ordered and the existence of a customer base to sell the goods to were all basic facts to this transaction. Frictionless World and Banjo knew that Tiya was mistaken as to these facts, and that Tiya could have reasonably expected disclosure given industry practice and the relationship between the parties.

### *Frictionless World Breaches the Purchase Orders and Invoices*

32. Tiya, in reliance on the Purchase Orders, shipped $652,326.50 worth of goods to Frictionless World and its designees pursuant to fifteen of the invoices.[2] These goods were accepted by Frictionless World and are either in Frictionless World's possession or sold by them.

33. Frictionless World did not pay any portion of these invoices.

34. Due to Frictionless World's failure to make payment when due, Tiya was able to stop delivery of $391,310.49 worth of goods shipped pursuant to invoices 1913TIV1372, 1913TIV1532, 1913TIV1554, 1913TIV1556 and 1913TIV1580. Tiya was then forced to ship the goods back to China, incurring roughly $124,000 in additional expenses.

---

[2] Specifically, Tiya shipped and Frictionless World accepted and took possession of the goods set forth in invoices 1913TIV1199, 1913TIV1209, 1913TIV1225, 1913TIV1227, 1913TIV1229, 1913TIV1360, 1913TIV1386, 1913TIV1387, 1913TIV1393, 1913TIV1455, 1913TIV1456, 1913TIV1488, 1913TIV1489, 1913TIV1555 and 1913TIV1691.

35. Since each of the returned goods incorporate Frictionless World trademarks and patents, Tiya cannot sell any of them without first incurring the inordinate expense of first disassembling them, removing the components containing Frictionless World intellectual property, and reassembling them using new components.

### *Frictionless World Acts as Banjo's Alter Ego*

36. At all relevant times, Banjo has acted in a manner that makes him inseparable from Frictionless world.

37. As a threshold matter, Banjo is Frictionless World's sole owner and manager.  He has continually operated Frictionless World for his sole benefit and to the detriment of its creditors.

38. For example, it appears that Banjo has regularly taken cash out of Frictionless World for his own personal use. According to filings by the Creditors' Committee based on information provided to it by Frictionless World, Banjo received $513,000 in member distributions from Frictionless World despite the beginnings of his dispute with CIU and the Li Defendants. In 2019, prior to the Petition Date, Banjo received $196,795 from Frictionless World despite, by Frictionless World's own admission, being well within the zone of insolvency.

39. Frictionless World has also paid Banjo's legal fees in its arbitration with CIU and the Li Defendants even though it was not named as a party in that arbitration and it is far from clear what, if any benefit, Frictionless World gets from this.

40. Additionally, Banjo has received monthly payments prior to and during the Case from the Estate for purportedly leasing his personal real property premised upon a lease agreement created immediately before Frictionless World's filing its bankruptcy petition. Based on that lease, Frictionless World listed a claim for pre-petition rent due Banjo as an undisputed claim in the amount of $520,000 (the "Banjo Claim"). Furthermore, during Frictionless World's bankruptcy,

it has paid Banjo monthly rent totaling at least $133,330 for 10 months of post-petition rent payments of $13,333 per month. Neither Frictionless World nor Banjo have justified these payments.

41. In addition, Banjo is also the agent and operator of an entity knowns as IRVA, LLC ("Irva") Irva is utilized (according to Banjo) to sell Frictionless World's products on-line. On information and belief, Irva is "owned" by Banjo's wife, and Banjo has personally benefitted from transfers and sales of Frictionless World's product through Irva to the detriment of Frictionless World and its creditors, including Tiya. On information and belief, from December 2018 to June 2019, Banjo received $202,364.42 from Irva relating to such sales. Irva has continued to sell Debtor's products during the Case without authority from the Court. According to Irva's bank statements provided to the Creditors' Committee's Financial Advisor, Irva has collected more than $70,000 in post-petition cash receipts from the sale of Debtor's products through e-commerce platforms such as Amazon.

42. All of the cash Banjo has received from Frictionless World has been financed in part by the goods Frictionless World obtained from Tiya due to its and Banjo's fraudulent actions.

43. Additionally, on information and belief, Banjo has not maintained corporate formalities with respect to Frictionless World. For example, Tiya is unaware of any operating agreement governing Frictionless World.

**FIRST CAUSE OF ACTION**
**Breach of Contract**
**(against Frictionless World)**

44. Tiya repeats and realleges paragraphs 1 through 43 as if fully set forth herein.

45. Tiya and Frictionless World entered into a series of binding contracts as set forth in the Purchase Orders and associated invoices.

46. Tiya performed its obligations under the Purchase Orders.

47. Frictionless World breached the terms of the Purchase Orders by not paying the first fifteen invoices of Tiya's when due after it received and took possession of the goods.

48. Tiya is therefore entitled to the full amount of these invoices.

49. In addition, due to Frictionless Worlds breach, Tiya was entitled under the terms of Colorado's Uniform Commercial Code to treat its remaining Purchase Orders as breached and stop delivery of those goods.

50. Due to Frictionless World's breaches, Tiya was entitled to the remedies set forth under Colorado's Uniform Commercial Code for the shipments on which it stopped delivery, which include, under certain circumstances, recovery of the contract price. *See, e.g.,* C.R.S. §§ 4-2-703(e) and 4-2-709.

51. Recovery of the contract price is appropriate here since the goods contain Frictionless World intellectual property which renders Tiya unable to sell them with reasonable effort at a reasonable price.

52. Tiya has also incurred roughly $124,000 in expenses shipping its goods back to China after stopping delivery.

53. As a result of Frictionless World's breach, Tiya has been damaged in an amount to be set at trial of no less than $1,043,636.99, plus pre-judgment interest.

**SECOND CAUSE OF ACTION**
**Fraudulent Concealment**
**(against Frictionless World and Banjo)**

54. Tiya repeats and realleges paragraphs 1 through 53 as if fully set forth herein.

55. By not revealing its parlous legal, financial and business condition to Tiya, Frictionless World concealed material existing facts that in equity and good conscience should have been disclosed.

56. Frictionless World knew that it did not disclose those facts to Tiya.

57. Tiya was unaware of Frictionless World's rapidly deteriorating legal, financial and business condition.

58. Frictionless World intended that its concealment of the facts be acted upon by having Tiya accept and perform in accordance with the Purchase Orders.

59. Tiya duly accepted and performed in accordance with the Purchase Orders and was damaged thereby.

60. Moreover, at all relevant times Frictionless World acted as Banjo's alter ego.

61. Banjo used Frictionless World's funds for his own benefit, disregarded corporate formalities and, as sole owner and manager, utilized Frictionless World's corporate form to facilitate his own misdeeds.

62. Also, as Frictionless World's sole owner and manager, Banjo cannot evade liability for his own fraudulent actions.

63. Accordingly, Banjo used Frictionless World's corporate structure to perpetrate a wrong against Tiya.

64. Banjo and Frictionless World are therefore jointly and severally liable to Tiya for its fraudulent concealment of material facts. As a result of this fraudulent concealment, Tiya has been damaged in an amount to be set at trial of no less than $1,043,636.99, plus pre-judgment interest.

**THIRD CAUSE OF ACTION**
**Common-Law Fraud**

**(against Frictionless World and Banjo)**

65. Tiya repeats and realleges paragraphs 1 through 64 as if fully set forth herein.

66. Frictionless World failed to disclose material facts regarding its parlous legal, financial and business condition to Tiya.

67. Frictionless World knew that it did not disclose those facts to Tiya and that a disclosure should be made.

68. Tiya was unaware of Frictionless World's rapidly deteriorating legal, financial and business condition.

69. Frictionless World intended that its non-disclosure of the facts be acted upon by having Tiya accept and perform in accordance with the Purchase Orders.

70. Tiya duly accepted and performed in accordance with the Purchase Orders and was damaged thereby.

71. Moreover, at all relevant times Frictionless World acted as Banjo's alter ego.

72. Banjo used Frictionless World's funds for his own benefit, disregarded corporate formalities and, as sole owner and manager, utilized Frictionless World's corporate form to facilitate his own misdeeds.

73. Also, as Frictionless World's sole owner and manager, Banjo cannot evade liability for his own fraudulent actions.

74. Accordingly, Banjo used Frictionless World's corporate structure to perpetrate a wrong against Tiya.

75. Banjo and Frictionless World are therefore jointly and severally liable to Tiya for its fraudulent non-disclosure. As a result of this fraud, Tiya has been damaged in an amount to be set at trial of no less than $1,043,636.99, plus pre-judgment interest.

WHEREFORE Tiya respectfully requests that the Court enter judgment against Frictionless World and Banjo as follows:

1. For damages in an amount no less than $1,043,636.99 on the First Cause of Action for breach of contract against Frictionless World, plus pre-judgment interest;

2. For damages in an amount no less than $1,043,636.99 on the Second Cause of Action for fraudulent concealment jointly and severally against Frictionless World and Banjo, plus pre-judgment interest;

3. For damages in an amount no less than $1,043,636.99 on the Third Cause of Action for fraud jointly and severally against Frictionless World and Banjo, plus pre-judgment interest;

4. Such costs, disbursements, fees and expenses as allowable under the law, inclusive of attorney fees; and

5. Such other and further legal and equitable relief as the Court deems just and proper.

Dated: New York, New York
July ___, 2020

Respectfully,

**THE LAW OFFICE OF THEODORE GEIGER, PLLC**

By: _/s/ Theodore S. Geiger_
Theodore S. Geiger, Esq.

85 Broad Street, 18th Floor
New York, NY 10004
(212) 804-8617
tgeiger@tedgeigerlaw.com

*Attorneys for Tiya International Co., Ltd.*